What did you call the first case? 18-19-6, 18-20-29, Antomas Cardenas v. Grozdic and Roe Estate Advisors. Come on up. And with the lawyers who are going to argue the case, please each state your names, beginning with the appellant, and spell your name for us. James McAtulley, M-A-C-C-H-I-T-S-T-O-M-E-L-L-I, Brooklyn. Shondor, T-A-R-K-E. All right, gentlemen. I think you both know you each have 20 minutes. You do not need to use it all. We have read the briefs, but you are entitled to it. Mr. McAtulley, would you like to reserve some of that 20 minutes for rebuttal? Okay. Come on up. You may have a seat. That does not amplify it. It only records, so keep your voice up when it's loud. May it please the Court, Your Honor?  This matter comes before you on appeal for a trial court's dismissal of a Second Amendment complaint with prejudice based on a theory of unclean hands and ripeness. This matter has a long history. In November of 2014, a trial was had on a complaint before a federal court under the Federal Labor Standards Act and the Illinois Wage Collection Payment Act. There was a claim that the plaintiff, Mr. Cardenas, was due earned wages from the defendant, Ray Grosznik, and the matter started to go to trial on 11-10-2014. 2011 was a holiday, so it reconvened again on November 12th. During that second day of trial, there was a settlement agreement reached between the plaintiff and defendant. The federal court judge read that agreement into the record. There is a record of that agreement and then subsequently stated within 10 days to file a written agreement between the parties. Which never happened. Which never happened, and that's the whole problem in this particular case. I think that the court can find that the plaintiff is not the only one that has a responsibility to make sure that that written agreement is achieved. There has to be some type of cooperation between the parties. And the parties cannot insist on terms that were not ever discussed nor part of the verbal agreement that was made written by a court reporter. If that makes any sense to the court. It was read into the record as what the main provisions of that particular agreement were. Mechanically, how did you give the judge something that she was reading from? Counsel and I, Mr. Dark and I, did provide the judge with a list of the terms that we believed were important. And the judge read over that agreement, believed that it was an enforceable agreement, and read it into the record. Okay. And the tax implications, were those discussed at that point at all? Never. Not once mentioned. And I ask this court to take into consideration that the employer, the defendants in this case, have 100 percent responsibility for the taxes. For withholding the taxes.  The plaintiff himself would file a complaint and would add that whatever income that he earned from the settlement agreement. And it was a payment over a period of time. So the first payment would have been $20,000. When he received that amount, he would have a responsibility to claim that amount as an employee on his IRS taxes. Before we get into the taxes, let me just be clear. At the first drafts, they put in things like confidentiality being only one-sided, and attorney's fees, that only you had to pay attorney's fees. But by the end, those issues were gone, I believe. Was the only issue by the end of the day the taxes? No. Well, they had taken out the one-sided attorney's fee provision. Right. There was a statement that the plaintiff had to return some property. We had no idea what they were talking about, property. Okay. But if he didn't have it, it always said if he had property, he had to return it. Which would have created substantial problems. Again, we had been in litigation with this particular case for a number of years prior to the federal case being filed. Okay. So the issues were the property and whether it was going to be treated as rages or liquidated damages. Those were the two issues by the end of the day. Yes. Is that fair to say? Yes. And nobody in their right mind in a plaintiff's position would ever, as an attorney, would ever advise their client, the plaintiff, to take that responsibility. Especially since none of that was ever discussed. Which is just the property or the taxes? Both. Okay. Because when you have a settlement agreement, you don't want to create issues. The issues have already been decided by the federal. Well, actually, they haven't been decided by the court. They've been decided by the agreement of the parties. And then they would be enforced by a court. That's the key question in this particular case. Does the state court have the jurisdiction? Earlier in the case, during the motions to dismiss, there were arguments that collateral estoppel would bar this claim. A motion to reconsider was provided to the trial judge, and he changed his mind. He's right. Collateral estoppel does not apply. You're not trying to enforce your FLSA claim. You're trying to enforce your breach of contract claim. The settlement agreement does not say it that way. Right. Because we don't know. The trial judge has stated clearly that there was an agreement, an enforceable agreement, between the parties. But you couldn't act on it until there was a written agreement. If the parties are not cooperating and they continuously, you know, encourage you to accept terms that are not acceptable. Okay. But speaking of terms that are not acceptable, your last draft accelerated that first payment from $20,000 to $40,000. What's the basis for that? The agreement stated that the first payment was to be received, you know, 10 days after the written agreement. I believe a short term should be allowed for that written agreement. So if there's no written agreement, they should still have responsibility to pay the first payment of $20,000. A year followed, they should pay the second amount of $10,000. During the litigation in the state court, another year passed. They had responsibility to pay those amounts on certain time periods that the plaintiff believed they would be due. And that was the reason that we accepted the minimal amount of money that we accepted and a payment plan. Okay. Did you ever go back to the district court and ask to enforce the settlement agreement? You cannot. And the case law is clear. They lose jurisdiction to handle any kind of matter on the settlement agreement. But how fast? I mean, they gave you 10 days to do it, and then it didn't become with prejudice until December 31st. Once they could do it during that period of time, right? Once that time period passed. No, I mean before that time period passed. Like on the 12th day, couldn't you say we didn't come to an agreement? Yes, we could. Okay. We didn't elect to take that avenue. We believe that we would be able to resolve this issue, and really it's a very simple issue. If you work for somebody for a number of years and you're not paid your earned wage, public policy states that the employer has a responsibility to pay employees for all past due earned wages. And that's a very strong position that this entire country was built on, the history of this particular country. And there's a United States Supreme Court case that was cited. It also states that when you have a settlement agreement in a federal court under a federal issue, it becomes a settlement agreement that is enforceable only in the state court pursuant to state law. The federal courts do not carry jurisdiction or continue to have jurisdiction because it's not a federal question. The only time a federal court would have jurisdiction is if the parties are from different states in diversity and the amount is over $75,000. That didn't apply in this particular case. And again, I asked this panel to take consideration of the trial judge's prior rulings that upon motions to reconsider were changed. And then a sanction was issued against the plaintiffs in the amount of almost $17,000 for attorney's fees. It doesn't seem to be a valid judgment. What was the sanction for? Because the judge believed by failing to remedy the situation earlier, it was bad faith. Earlier in the state court or earlier in the federal court? He didn't disclose what he meant. So he didn't say you should have resolved this two years ago? No. And on his prior ruling on January 8, 2018. Which is how many years after the settlement? Three and a half. Three and a quarter. He stated that there was no bad faith. There was no improper conduct by the plaintiff. And because we filed a motion to reconsider, I guess he changed his mind completely. It doesn't seem rational that you would make a decision and then completely reverse it without any basis. By saying that, okay, you're right, collateral stop rule does not apply. Okay, but I'm going to change my mind again. And we're going to say that you had unclean hands. Well, what are the elements of an unclean hands claim? You know, bad faith, fraud, misrepresentation. Who did he assess the sanction against, you or you and your client? Me and my client. And did he give any rationale as to why the client was dragged into the sanction? No. And he just stated that he's going to change his findings that we operated in bad faith. Which contract were you seeking specific performance of? The oral contract that Judge Kendall recited in open court, was that the contract you're trying to enforce in your second amended complaint? Yes. We tried to move for specific performance. Of that contract. Of that contract. And was the first step of that to execute a written agreement? Is that what you're saying? Right. But we shouldn't be held to that written agreement because it should be forfeited. And, again, that's an issue. What should be forfeited? The written agreement part of that, you know, judgment should be forfeited because the defendants really did not act in good faith. I asked the panel to look at what both parties did in this case, what the plaintiff did and what the defendants did. There was a finding that, well, there's not an unreasonable delay in this case because the defendant has no damages. You have a responsibility to pay a judgment that you're not going to pay, so you're holding on to your own money. That's a benefit to you. And that's what I asked this panel to take into consideration, that that was the defendant's objective in this case. It's a second thought. It's an agreement to pay a certain amount of money to a plaintiff, and thereafter you say, well, wait a minute, I don't like this agreement. I want to change it. I want a second bite at the apple, which you can't do. I'm just a little bit confused about that Exhibit G to the complaint, the question to the second amendment complaint, where it's alleged, and wasn't this part of the sanction that it alleged that it contains the definite terms which were expressed in court and memorialized in writing, and they expressly agreed to them, and that the settlement proposal that's attached as Exhibit B is a settlement agreement that memorializes the material terms of the settlement agreement, but that has other terms and has the $40,000 first payment. If those provisions were not acceptable to the court or to the defendant, they should have come back and they should have countered that offer. I had a good faith request for the $40,000 because, as I explained, a lot more time had passed. Yeah, and I mean, your comment that it should have been countered I think goes to day 10, to be honest, that they should have been countering back and forth. Excuse me. Did you start negotiating the written agreement the day after you walked out of court? It was provided to me on November 19th, and I had explained to the court that I was going on a long planned trip to Europe. When I returned, I had a chance to discuss it with my client, and we responded on December 20th, and then received another reply on December 22nd, and then everything fell apart from that point forward. Yeah. And, again, both parties to an agreement. Am I right that after they replied to you on December 22nd, they didn't send you another draft until March of the next year? Is that correct? They said they did, but I never received it. You never received the March draft? And I asked the court to take consideration of the fact that it was provided as an exhibit to the motion to dismiss, and, again, it was sent via mail. All other things that were settlement agreements that were proposed to one another were sent by e-mail. This one was not, and you cannot make up a transmission by e-mail, and that's what I'm discussing in court. So after you sent them your revisions to their original draft, and then they sent a letter and said, we're going to get back to you, and then they didn't as far as you knew, what did you do? They did get back, and we weren't going anywhere because the tax issue became something that neither party could agree on, and I wanted this court or the state court to enforce my agreement where there was no discussion of tax benefits or tax responsibilities. And they never once ---- So this is what your suggestion was, no discussion of it? We had discussed it, and I said it wasn't part of our discussion. Please don't include that. It wasn't part of your agreement. Pardon me? It wasn't part of your agreement. Correct. Is what you're objecting to is them having your client indemnify that? Is that part of it? 100%. And in addition, my client would do what he legally has to do. He would declare that as income and pay a reasonable amount of tax, whatever he owed. It would be a lot less after attorney's fees and, you know, other costs and expenses, so it wouldn't have been a substantial responsibility for him. In addition, I asked the court to take into consideration the fact that that shouldn't have been a reason to not enter this agreement. It's a viable complaint for the plaintiff to say, I don't want any responsibility or any further problems that we never discussed. An employer has a responsibility to pay whatever the employer has to pay under FICA and under federal taxes. That's not something my client wanted the responsibility to do. And I don't know if my time has expired. If you want to reserve five minutes or less, there's more questions. My closing statement is, please, judge both parties equally. They both have the same responsibilities. You can't say that one party has the sole responsibility to reach an agreement. Thank you. Afternoon, Your Honor. May it please the Court, Sean Darke representing the appellees, real estate advisors of all. I'd like to touch on some things that opposing counsel stated just to clear it up. The first thing is the IRS rules. The IRS rules when you're talking about a fair labor standard case or any wage and hour case has two parts. Fair labor, you can have back wages, which have to be taxed through a payroll system, or you can get liquidated damages. Liquidated damages say, hey, listen, you don't have to tax these. It's almost free money. But liquidated damages was not anything you ever talked about in the settlement agreement. Right, Your Honor. Right. I disagree with that. We were in the chambers with Judge Kendall. We did not put it on the record, but we were in chambers with Judge Kendall. We said, listen, we've got to talk about this issue because they want a 1099 payment on back wages. And we said, well, we can't do that. I don't think there's a way to get around that. Couldn't you have gone back in front of Judge Kendall then because she was there when you had that discussion? Correct. I didn't know it was a big issue with opposing counseling. Well, your first draft was 1099-ing everything. Correct, because we were looking into whether or not we can do the liquidate or we can do everything as a 1099. It turns out that the IRS has regulations on that, which I sent opposing counsel. Right, but not in your second or third draft. In your first draft, you wanted a 1099-ing everything. Correct. And you wanted his client to indemnify you. Correct. And indemnification was not anything talked about with Judge Kendall, correct? Absolutely. Correct. Correct. So what happens after the judgment, the case gets dismissed, we end up sending a correspondence in March of that following year. We don't hear anything from opposing counsel. He says he never got your March letter. Well, Your Honor, we can disagree with that. I mean, let's say he did get it. Did you not e-mail it? Did you send it by mail and not by e-mail? We sent it by mail, and there's actually a photocopy of the envelope, I believe, in the record that shows the date that it was mailed. Now, regardless of that, and that would be in the state court, but regardless of that, we never heard from opposing counsel, even from that e-mail. December, we said, listen, there's no agreement here. The agreement doesn't start running because you provided us a draft agreement where you took out material terms that we talked about. He removed those. We don't hear from him at all until almost a year later, saying, hey, listen, I want a double hearing. So by not hearing from him a year later, is it your position that you no longer had an obligation to comply with the settlement of paying the man $50,000? No. Not at all. When he sent us a communication in December, if you look in the record, we provided him another settlement agreement in February of 2016 or January of 2016. Well, just because the debtor sends the creditor an agreement that the creditor does not agree with doesn't wipe away your debt. I mean, you still owe the man $50,000 at that time. You just haven't really agreed on some IRS regulation, but you still owe him $50,000. Well, it was more than just the IRS because they had taken out material terms that they were not responding to us to sign an agreement that had the correct material terms in it. What would those be? We had the non-dischargement clause. This is, as opposing counsel mentioned. Which was, when you put it on the record, mutual, but in your first draft was only going to his client, not to you, correct? Your first draft did not make that mutual. It only put it on him. No, I believe it did. If you look in the first paragraph of the agreement, it talks about our responsibility. Then the second paragraph in that same section provides our responsibility, not disparaging against them. It might be that. It could be that. And then in February, we provide another settlement agreement, saying, hey, here's the agreement that we were looking at. This is what we would be willing to sign. But again, then we don't hear anything until October when he files the complaint, where our suspicion is that he wants the double damages that's contained in that settlement agreement. We attempted to settle on numerous occasions, even after the fact, that the case was dismissed with prejudice. We never said, hey, listen, we don't owe you any money. He provided, and in all of his complaints, he is trying to enforce a draft agreement that took out material terms and that was never executed, which never triggered our payment, and therefore would not be enforceable. In addition And what he was taking out was the non-disparagement? Or what were the terms that he He took out the non-disparagement. He took out other details that we agreed to some, we didn't agree to other. We still wanted to talk about the IRS issue, but we never heard from him whether he agreed with that or didn't agree with it. He's got non-disparagement in his Exhibit G. He's got non-disparagement. Are you referring to the Second Amendment complaint? I'm talking about the last settlements that you had non-disparagement in it. So what is the material term that he took out? He took out non-disparagement from his It's in Exhibit G. Well, Exhibit G is the one that has a $40,000 payment, which we discussed. So you're saying he cost it out of your Exhibit, he cost it out in Exhibit B. Is that what you're saying? Correct. Exhibit B is the only one that's ever been signed as well. I mean, to date, there still has not been any signed contract to trigger any payment from our end. And the one that he attached said, hey, listen, you sent it, and this is what, three years? He sent you Exhibit G. Three years after the case being dismissed. Okay. So you're saying this all fell apart because he took out non-disparagement? Is that what you're saying? When he sent us the non-disparagement about four or five days before the case was being dismissed with prejudice, we could not sign that because that's a brand new offer. Okay. So then in March, we sent him another agreement and said, hey, listen, here's everything back here. We've accepted some of your changes, and then we never hear from him. We couldn't sign any type of agreement because that's not the offer we made. It would have been a completely new offer. Okay. And we just could not sign it. Okay. It's not a new offer. The material element of this whole thing was $50,000, right? Plus the payments, plus the writing, plus the tender execution. From what I'm hearing, it sounds like the defendant's position is, as long as we don't have a written agreement that both sides agree to, there is no agreement. And we can, in our mind, never agree in writing and never have to pay. That's pretty much what I'm hearing. Well, on the record, one of the material terms was that it was going to be a written settlement agreement, and it has to be signed in order to be executed within the 10 days. And until that happens, you're correct, we don't have to honor any of the drafts or anything that he sent over. What if he signed a transcript? Excuse me? What if he signed a transcript? Well, remember, the deal was in the material terms that we were going to work it out in writing with other details as well. And we put that on the record because the other details were important to all the parties. What would you suggest would be the answer to the problem that two attorneys acting in their own minds as reasonably as they can possibly be just cannot agree on the final written document? What is one to do to get the client to fulfill the obligation to pay the man he owes $50,000? What you seem to be saying is, as long as I reasonably take a position that this is not our agreement, I'm not going to sign it, I don't owe anything. What should have happened, Your Honor, is back in when this first settlement agreement in federal court occurred and the judge used that springing dismissal where they dismiss it early without prejudice and then later on with prejudice. Prior to that dismissal with prejudice, plaintiffs should have filed a motion to vacate that initial order. That's how it's done. That's how it's always been done. In the Covenant, there's a trilogy of cases that talk specifically about that, that whenever you use a springing type of dismissal, it's at our own peril. And if they don't file a motion to vacate, then they can't talk about the settlement. Well, yes. I mean, certainly I think all of us, including your opposing counsel, would agree that's what should have happened. But if that doesn't happen, he loses his $50,000? He has no right to enforce the agreement that you reached to pay his client $50,000? And runs the risk of another $20,000 in sanctions because he attempted to get for his client what his client was entitled to? It just doesn't sound right. But no agreement's ever been reached. No agreement has been solidified in order for us to sign it in writing to work out all the deals as stated on the record. Let's just pretend, and I think there's maybe some truth to this pretense, that you took unreasonable positions. And you just kept taking them and taking them and taking them and taking them, so no agreement could ever be signed. Does he lose his $50,000? It depends on when that happened. If it happened after the federal court had jurisdiction where we could go back to the federal court, obviously the court would have settled that. They would have said, listen, what you're doing is unreasonable. Say the federal court has lost its jurisdiction and you've never acted in good faith in order to try to reach a settlement agreement. Let's assume that is the fact. He loses his $50,000? He has no right to make you operate in good faith to reach a settlement? Without a written agreement. It doesn't trigger our payment. I understand. But you do have an obligation to work with him to reach a written agreement. Do you not? We do, and we certainly did. We sent him how many multiple? Let's start with your first draft. Your first draft has him paying attorney's fees and not your client. That was never discussed, right? Correct. Okay, so that's something you put in that was never discussed. Correct, but we also talked about in the record and on the record that we have to work out those details. Okay. So that's a detail that he wanted to work out, saying, listen, I'm not going to pay for this or my client's not going to pay for that. Then he comes back and says, hey, listen, we're not agreeing to this because the back story between these two individuals is a heated history, and this is the whole thing we want to avoid where we're getting brought into litigation year after year after year. And the return of property, that was never discussed, right? His client having to return property, that was never discussed with Judge Kendall, correct? That is correct. We never discussed that. But in there it says, if you have any, please return it because we want the property. This individual actually lived on the premises of an apartment complex, and he was their handyman. So we didn't know if he had tools in his apartment or anything to that extent. So we put in there, if you have any property, please return it if you have any. That's typically what I put in settlement agreements as a standard clause as well. But with that, I will turn the floor to opposing counsel. I believe that the trial judge's decision should be affirmed on both the sanction as well as the underlying. On the sanction, your position is against both the client and the attorney? It was against the attorney, Your Honor. I don't know. I can't remember if it was against the plaintiff as well. But it was the attorney's actions that led us to that. And the whole purpose of the sanction was the trial judge said once he ruled on the first motion. So that first motion, that was dismissed. He said this contract, the draft agreement, is not enforceable. And then plaintiff counsel attached to that same draft agreement  That's where that sanction came in. Through his motion to reconsider? How was he trying to enforce it? You said the judge sanctioned the lawyer because he was trying to enforce something that the judge found unenforceable. How did that happen? So initially, when he filed his first initial complaint, we filed a motion to dismiss that. We prevailed on it because the court said that this is not an enforceable contract. And then the second amended complaint included that same draft where he was trying to enforce the same one the judge just said is not enforceable. Well, if he wanted to appeal, ultimately, the judge's ruling that he felt was erroneous in the first place, he would have to have re-pled it. Otherwise, he forfeits it on appeal. It's just hard to follow. Yeah, I don't think he pled the exact same. He attached the agreement, but then he went to specific performance and not to breach a contract. So he changed his theory as well in the second amended complaint. Was he given leave to re-plead? I believe he was. Well, that's sort of what happens. Come up with a new idea. Right? Yep. Just so I'm clear, what's your justification for treating even half of the payment as liquidated damages? So IRS put out regulations, I mean, maybe seven or eight years ago, maybe even longer, where it says that if you're doing a fair labor standards settlement, you can treat half of those as back wages, and then you can treat another half as liquidated. Those liquidated do not have to be taxed, so it helps the plaintiffs obtain more. There's still taxable income to the plaintiff. Not as wages. I understand. But it's income. Why would you care? Why would the employer care? Yeah, why do you care? Because in order to get the trial done at the time, we talked about giving him additional money, because he wanted, I think they wanted $150,000. So you agreed to give him $50,000. Yeah. Why would the employer care whether the employee treats it as a damage award and as wages? Why would he care? Because in order to get the settlement done during trial, we said, listen, we'll treat half of this as liquidated damages. That way it gives your client more money to push them over the edge and say, okay, listen, we'll settle it. Right. Because we were, I want to say maybe we were like 40 or 50. His last draft was trying to treat the whole thing as wages, and his allegation was you refused to treat it as wages. That's his allegation. You refused to treat it as wages. Well, we have to treat it as wages. IRS regulation requires that. His last draft was treat it all as wages, pay your employer on the side of the, you know, Social Security and the FICA, and treat it all as wages. That's his last draft. And you keep saying, no, no, no, I want to treat half of it as liquidated damages. No, we never had a conversation in hardware trading because they never contacted us. I'm just looking at your drafts. I didn't hear your conversations, but I'm saying his last draft is treat it all as wages. And your last draft is, no, treat it half. Oh, you're referring to the Exhibit G on the second line of complaint? Right. Yeah, he puts all the wages in there. And to go back to Justice Pierce's question, what did you care? If he wanted to treat it all as wages, what do you care? I agree, but in that same Exhibit G, it talks about $40,000 in the initial payment. Okay, I understand why you care about that. Yeah. And that's the basis on which he indemnifies you for any tax liability. Well, that was put in there initially at the 1099 because we were going to treat everything as 1099. And that's why it was corrected later on. The IRS issue, I don't care if he has it as back wages. It didn't mean anything to us. We were trying to give them more money. It's just he never contacted us before saying, listen, this is a problem. I don't want to give my client more money. Okay. And I'll go back to my one last question, and I'll try to ask it a little less aggressively. Let's assume you are not operating in good faith at all to reach a settlement. Whatever he says blue, you say red. Can you just do that forever, and then you have no obligation to ever pay him $50,000? Well, it depends on the facts of how I was acting in bad faith. No, I'm saying, let's just say. Whether a court even has jurisdiction to look into the settlement. Okay. So let's talk about the second question. Why can't the state court enforce the settlement and enforce a covenant that requires you to operate in good faith to try to reach a final settlement agreement? Because the terms on the record talk about that in order to be enforceable, it has to be executed. Right. Within 10 days, we'd make that first payment. Wait, does it say on the record that it has to be executed within 10 days? No, no, no, no, no, no. Okay. It says that once fully executed, we're going to make that first payment in 10 days. Right. So the first step of the settlement agreement is that you're going to execute a written settlement agreement, correct? Correct. And if you don't operate in good faith to do that, why isn't that a breach of this settlement agreement? Because there's no settlement agreement to breach because there's no fully executed agreement. There's an oral agreement that says the first thing we're going to do is execute a written agreement. And you don't operate in good faith to do that. Then you come back in front of the judge and say, listen, look how they're acting. They're unreasonable. You can't just go and file a breach of contract claim and say, hey, listen, force them to sign an agreement. Force them to operate in good faith to reach an executable settlement agreement. But the agreement that he was trying to have us sign took out material terms that were on the record. Okay. And added payments that were different. Thank you, Your Honor. Thank you, Counsel. I think the panel understands what my frustration has been through this entire case. Both parties have to act in good faith. Both parties need to come to the negotiating table and reach this written agreement on the terms that were provided in the written record in the federal court. That was not done. My Exhibit G was my last effort to do so. I attached a settlement agreement that I believed included all of the important elements that were discussed on the record. But as counsel had stated, opposing counsel had stated, but it wasn't done within ten days. There was never good faith participation to reach an agreement. And Judge Mikva, you said it pretty much clear as day. When I said blue, they said red. And that's the way it remained. All discussions in the hallway was about this tax responsibility and this liquidated damages. It's so important. And you have to do it this way. There's federal guidelines that tell you you have to do it this way, and they were attached to pleadings. And it was a ridiculous argument that I kept explaining to Mr. Darke. It is not, as you state, mandatory. You must pay an employee for earned wages. The employer must pay his responsibilities to FICA or to the federal government, whatever portions he must pay. Let me stop you for just one second. Because this is the part I think that's really also troubling to all of us. From December 14th, when he sends you an e-mail and says, I'm not done with what you just sent me, and he says he vote you in March, you say you never got that. You did nothing from December 14th till when? And again, I ask the court, is that bad faith? I don't know what it is. Maybe not perfect lawyering. Okay. Is it a basis for you now to say, because there was a delay, I don't owe you $50,000? And this panel doesn't understand. I have an individual who hasn't been paid in how many years. It's very difficult to get filing fees from clients, which you must get. So I ask the court to take this. Not just send somebody a letter and he won't take a file. The letters were not accomplishing anything. It was they didn't want to pay. And Judge Pierce said correctly, as long as there was not that written agreement, I had no obligation to pay, meaning the defendants had no obligation to pay. How is that somehow terminated, you know, turned on me as an attorney for the plaintiffs, stating that, well, I acted in bad faith because I didn't act quickly in getting that 10-day agreement enforced or established? It just doesn't have any law or any basis in the law. There's nothing that I know of that, you know, there were complaints brought in the motions to dismiss that I didn't act timely. And the judge denied those. In Exhibit G, besides the $40,000 versus $20,000, there's this breakdown of so much being paid, you know, $25,000 to the defendant, $13,000 to you, $780 to you. Why wouldn't a check just be made to the two of you? I was explaining it to your side how that money would be broken up. If they wanted to write one check, they could write one check. If they wanted to write two different checks, they could write two different checks. I believe they said to me they want to write two different checks. So I broke down what my attorney's fees and costs were and what I was entitled to. Usually on settlement agreements, insurance companies or defendants pay to, you know, pay to the order of the party and his attorney. I don't believe they wanted to do it that way, and I didn't understand why, but it didn't affect my client, so I didn't object. And again, public policy of the United States federal government. That's why we have the Federal Labor Standards Act. Fair Labor Standards Act. I'm sorry, I apologize. Fair Labor Standards Act. I just used to do that work. And the Illinois Wage Payment Collection Act.  And we shouldn't have to go through years of litigation. We shouldn't have to go through appeals, and we shouldn't have to go through dismissals. There are two parties in this case, a plaintiff and a defendant, and both must fairly try to accomplish a settlement agreement. You can't put it on me 100% as plaintiff's attorneys. You just can't do it. I appreciate it. Thank you. Thank you, counsel. Thank you both. We will take this matter under advisement. We're going to take a very short recess, and then the court will re-adjourn. Or re-forward. Come back.